**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **GABRIELA MUNIZ and** ) | |
| **EDUARDO MUNIZ,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| ) | **Case No. 23-cv-11075-DJC** |
| **LOREN K. MILLER,** ) | |
| **ALEJANDRO MAYORKAS,** ) | |
| **ANTONY J. BLINKEN,** ) | |
| **CONN SCHRADER,** ) | |
| **ELIZABETH BAGLEY and** ) | |
| **UR M. JADDOU,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                    **February 14, 2024**

## I.      Introduction

Plaintiffs Gabriela Muniz ("Ms. Muniz") and Eduardo Muniz ("Mr. Muniz") (collectively,

"Plaintiffs") have filed this lawsuit against Defendants Loren K. Miller, in her official capacity as

the Director of the Nebraska Service Center, Alejandro Mayorkas, in his official capacity as the

Secretary of Homeland Security, Ur M. Jaddou, in her official capacity as Director of the United

States Citizenship and Immigration Services (collectively, "USCIS") and Antony J. Blinken, in

his official capacity as Secretary of the United States Department of State, Conn Schrader, in his

official capacity as Director of the National Visa Center, and Elizabeth Bagley, in her official

capacity as the United States Ambassador to Brazil (collectively, the "Department of State").

Against USCIS, Plaintiffs seek an issuance of a writ of mandamus to compel the agency to

adjudicate their I-601A Waiver Applications ("Waiver Applications") (Count I) and a declaration

that USCIS's delay in adjudicating these applications violates the Administrative Procedure Act ("APA") (Count II). D. 1; <u>Muniz v. Miller</u>, No. 23-cv-11077 (D. Mass. May 12, 2023), D. 1 ("Mr. Muniz Compl."). Against the Department of State, Plaintiffs seek an order compelling it to schedule consular appointments for Plaintiffs. D. 1 at 11; Mr. Muniz Compl. at 11. Both USCIS and the Department of State have moved to dismiss. D. 12. For the reasons stated below, the Court ALLOWS the motion.

## II.    Standard of Review

### A.    Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995) (quoting <u>Taber Partners, I v. Merit Builders, Inc.</u>, 987 F.2d 57, 60 (1st Cir. 1993)). When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." <u>Aversa v. United States</u>, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Court may widen its gaze and look beyond the pleadings to determine jurisdiction. <u>See</u> <u>Martínez-Rivera v. Puerto Rico</u>, 812 F.3d 69, 74 (1st Cir. 2016). Further, "[w]hen faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." <u>Ne. Erectors Ass'n v. Sec'y of Lab.</u>, 62 F.3d 37, 39 (1st Cir. 1995).

### B.    Dismissal for Failure to State a Claim under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012) (citation

omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

## III.    Background

### A.    Unlawful Presence Waiver

Pursuant to 8 U.S.C. § 1182(a)(9)(B)(i)(II), an individual who "has been unlawfully present in the United States for at least one year and then leaves the country is barred from re-entering the United States for ten years."  Jimenez v. Nielsen, 334 F. Supp. 3d 370, 377 (D. Mass. 2018).  The Secretary of Homeland Security, however, has the discretion to waive this bar if refusing to admit this individual "would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien."  8 U.S.C. § 1182(a)(9)(B)(v); Jimenez, 334 F. Supp. 3d at 377.  An eligible individual may seek this relief by filing a Form I-601A, Application for Provisional Unlawful Presence Waiver with USCIS.  8 C.F.R. § 212.7(e); Jimenez, 334 F. Supp. 3d at 378.

### B.    Factual Background

The Court draws the following factual allegations from the complaint and accepts them as true for the purpose of resolving the motion to dismiss.

Plaintiffs, a married couple, are citizens of Brazil who entered the United States in 2003 on a B-2 visa and never left.  D. 1 at 7 ¶¶ 1-3; Mr. Muniz Compl. at 7 ¶¶ 1-3.  They have two

children.  D. 1 at 7 ¶ 2; Mr. Muniz Compl. at 7 ¶ 2.  Ms. Muniz's mother, a U.S. citizen, filed an I-130, Petition for Alien Relative ("I-130") on behalf of Ms. Muniz on June 24, 2008, which was approved on August 25, 2010.  D. 1 at 7 ¶ 4; D. 1-3; Mr. Muniz Compl. at 7 ¶ 3.  Mr. Muniz is a derivative beneficiary of the I-130 since he was married to Ms. Muniz at the time of filing.  Mr. Muniz Compl. at 7 ¶ 3.

Ms. Muniz submitted her Waiver Application on July 21, 2020, D. 1 at 7 ¶ 6, on the basis that her removal would cause extreme hardship to her U.S. Citizen mother, Diva Ribeiro ("Ribeiro"), id. at 8 ¶ 12.  Ribeiro has a series of medical issues and relies upon Ms. Muniz for care.  Id.  ¶¶ 12-13.

Mr. Muniz submitted his Waiver Application on September 29, 2020, Mr. Muniz Compl. at 7 ¶ 4, contending that his removal would cause extreme hardship to his father, a lawful permanent resident, id. at 2.  Mr. Muniz's father also suffers from a number of health issues and relies upon Mr. Muniz for his daily care.  Mr. Muniz Compl. at 8 ¶ 10.  Mr. Muniz employs his father at his construction company, which is his father's main source of income.  Id. ¶ 11.

USCIS posts processing times of Waiver Applications on its website.  D. 1 at 7 ¶ 7; Mr. Muniz Compl. at 7 ¶ 5.  According to the USCIS website, the processing time is based on how long it took USCIS to complete eighty percent of adjudicated cases over the past six months.  D. 1 at 7 ¶ 8; D. 1-4 at 2; Mr. Muniz Compl. at 7 ¶ 6.  USCIS assigned Plaintiffs' Waiver Applications to the Nebraska Service Center, which, as of the filing of the complaints here, has an estimated processing time of thirty-eight months.  D. 1 at 2; Mr. Muniz Compl. at 2.

Since Plaintiffs filed their Waiver Applications, USCIS's processing time has increased.  D. 1 at 8; Mr. Muniz Compl. at 8.  As alleged, the more USCIS delays adjudication, the longer its estimated future processing time becomes, which in turn further blocks applicants from inquiring

about pending cases.  D. 1 at 7 ¶ 9; Mr. Muniz Compl. at 7 ¶ 7.  In the past, USCIS has processed Waiver Applications within four to seven months from the time of filing.  D. 1 at 2-3; Mr. Muniz Compl. at 3.

IV.    **Procedural History**

Plaintiffs instituted this action separately on May 12, 2023.  D. 1; <u>Muniz v. Miller</u>, No. 23-cv-11077 (D. Mass. May 12, 2023), D. 1.  The two cases were then consolidated in this matter. D. 11.  USCIS and the Department of State have now moved to dismiss as to both Plaintiffs.  D. 12.  The Court heard the parties on the pending motion and took this matter under advisement.  D. 27.

V.    **Discussion**

A.    <u>**Claims Against the Department of State**</u>

The Department of State argues that the Court should dismiss any claims against it because Plaintiffs fail to allege any harm caused by the department and it has no role to play in the adjudication of the Waiver Applications.  D. 13 at 11-12.  Plaintiffs seek an order from the Court compelling the Department of State to schedule consular appointments for Plaintiffs.  D. 1 at 11; Mr. Muniz Compl. at 11.  Plaintiffs' claims against the Department of State, however, are not ripe.

The ripeness doctrine "asks whether an injury that has not yet happened is sufficiently likely to happen to warrant judicial review."  <u>Gun Owners' Action League, Inc. v. Swift</u>, 284 F.3d 198, 205 (1st Cir. 2002) (citation and internal quotation marks omitted).  A claim is ripe "only if . . . the issues raised are fit for judicial decision at the time the suit is filed and . . . the party bringing suit will suffer hardship if court consideration is withheld."  <u>Lab. Relations Div. of Constr. Indus. of Mass., Inc. v. Healey</u>, 844 F.3d 318, 326 (1st Cir. 2016) (citation and internal quotation marks omitted).  In conducting the fitness inquiry, the Court considers "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all."  <u>Ernst</u>

& Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 536 (1st Cir. 1995) (internal quotation marks omitted) (quoting Mass. Ass'n of Afro-Am. Police, Inc. v. Bos. Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992)).

As the Department of State points out, a petitioner is not even eligible for a consular interview unless and until USCIS approves his or her waiver applications.  D. 13 at 12.  Plaintiffs concede as much in their prayer for relief, where they request that the Court "[e]nter an order compelling USCIS Defendant to forward the I-604A Petition once approved to the U.S. Department of State."  D. 1 at 11; Mr. Muniz Compl. at 11.  Because USCIS has yet to render a decision on the Waiver Application as to Mr. Muniz and because that decision could be a denial of relief, whether he will be eligible for a consular interview remains speculative at this point.  See Reyes Silva v. Miller, No. 4:23CV3038, 2023 WL 7042347, at *12 (D. Neb. Oct. 26, 2023) (concluding that plaintiffs could not satisfy the "fitness" prong of the ripeness analysis because "§ 1182(a)(9)(B) requires a waiver of unlawful presence before a visa can be issued" and since "there has been no such waiver" approved, the Department of State defendants cannot adjudicate plaintiff's visa application); Mercado v. Miller, No. 2:22-cv-02182-JAD-EJY, 2023 WL 4406292, at *3 (D. Nev. July 7, 2023) (holding that plaintiffs' claims against the Department of State defendants are not ripe because they are "contingent on the hypothetical granting of [plaintiff]'s I-601A waiver" and  "no consular interview can be scheduled until USCIS . . . has approved the applicant's I-601A waiver application").  The Court is aware that the recent status report, filed January 22, 2024, D. 28, indicates that USCIS now has approved Ms. Muniz's I-601A application. Even as to this recent approval of Ms. Muniz's application, in which the "approval of her provisional unlawful presence waiver is subject to the conditions" that she leave the United States, appear  at a U.S. embassy or consulate or interview and a consular officer determine that she is

otherwise eligible for an immigrant visa, D. 28-1, there is no suggestion in the status report or on the record since that filing that she has appeared for that interview or that the consulate has otherwise failed to schedule it such that her claim is ripe.  See Beltran v. Miller, No. 4:23-cv-3053, 2023 WL 6958622, at *7 (D. Neb. Oct. 20, 2023) (dismissing claim against the State Department noting that "[b]ecause any future delay by the Department is contingent on possibilities not apparent on this record, there is no active case or controversy with regard to the scheduling of [petitioner's] visa interview, and any consideration of this issue would be premature").

Accordingly, the claims against the Department of State are thus not currently fit for judicial review and the Court allows the motion to dismiss as to the Department of State defendants, but does so without prejudice.

**B.**     **The APA Claim (Count II)**

*1.     Subject Matter Jurisdiction*

Plaintiffs argue that the USCIS's delay in adjudicating their Waiver Applications is unreasonable and violates the APA.  D. 1 at 11; Mr. Muniz Compl. at 11.  The APA requires that agencies conclude matters before them "within a reasonable time," 5 U.S.C. § 555(b), and allows a court to "compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). USCIS argues that the Court cannot compel agency action under the APA because the APA provides that the only agency action that can be compelled is action "legally required."  D. 13 at 7 (citing Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63-64 (2004)).  Although the decision to grant or deny relief under 8 U.S.C. § 1182(a)(9)(B)(v) is within the discretion of the Secretary, USCIS nonetheless has a "nondiscretionary duty to adjudicate" all Waiver Applications and render a decision.  Granados v. United States, No. 23-CV-250-MEH, 2023 WL 5831515, at *5 (D. Colo. Aug. 23, 2023); see Litvin v. Chertoff, 586 F. Supp. 2d 9, 11 (D. Mass. 2008) (holding that "the

government has a nondiscretionary duty to act on [naturalization] applications by processing them"); 8 C.F.R. § 103.2(b)(8)(i).

A court may not compel agency action under the APA where another statute "preclude[s] judicial review."  5 U.S.C § 701(a)(1).  USCIS argues that this Court lacks subject matter jurisdiction over Plaintiffs' claims because Section 1182(a)(9)(B)(v) of the Immigration and Nationality Act ("INA") precludes judicial review of any decision or action by the Secretary regarding an unlawful presence waiver.  D. 13 at 8; 8 U.S.C. § 1182(a)(9)(B)(v) (providing that "[n]o court shall have jurisdiction to review a decision or action . . . regarding a waiver under this clause").

At issue here is whether USCIS's delay in adjudicating Plaintiffs' Waiver Applications constitutes a decision or action regarding a waiver under Section 1182(a)(9)(B)(v) of the INA. The majority of courts to address this question have concluded that courts lack subject matter jurisdiction to review challenges to delays in adjudication of Waiver Applications.  See, e.g., Garcia Sanchez et al. v. U.S. Citizenship and Immigr. Servs., No. 23-cv-03102, 2023 WL 9500875, *2-3 (D. Neb. Nov. 16, 2023) (holding that the court lacks subject matter jurisdiction to review unreasonable delay claims under Section 1182(a)(9)(B)(v)); Hernandez et al. v. Miller et al., No. 23-cv-03084, 2023 WL 9501175, *2 (D. Neb. Nov. 15, 2023) (same); Cisneros et al. v. Miller et al., No. 23-cv-03074, 2023 WL 9500782, *1 (D. Neb. Nov. 14, 2023) (same); Macias v. Miller, No. 4:23-cv-3078, 2023 WL 8253203, at *3 (D. Neb. Nov. 13, 2023) (same); Ybarra v. Miller, No. 4:23-cv-3082, 2023 WL 7323365, at *8 (D. Neb. Nov. 7, 2023) (same); Lemus Solorio et al. v. Miller et al., No. 23-cv-03071, 2023 WL 9501176, *7 (D. Neb. Nov. 1, 2023) (same); Reyes Silva v. Miller, No. 4:23-cv-3038, 2023 WL 7042347, at *8 (D. Neb. Oct. 26, 2023) (same); Grajales Cortes et al. v. Miller et al., No. 23-cv-03073, 2023 WL 9500788, *3 (D. Neb. Oct. 20,

2023) (same); Beltran, 2023 WL 6958622, at *6 (same); Boczkowski v. Mayorkas et al., No. 23-cv-02916 (N.D. Ill. Oct. 6, 2023), D. 16 at 1 (same); Lozoya Rodriguez et al. v. Mayorkas et al., No. 22-cv-753 (D.N.M. Sept. 27, 2023), D. 22 at 5 (same); Vijay v. Garland, No. 2:23-CV-157-SPC-KCD, 2023 WL 6064326, at *2 (M.D. Fla. Sept. 18, 2023) (same); Echeverri v. U.S. Citizenship & Immigr. Servs., No. 23-cv-21711-RAR, 2023 WL 5350810, at *4 (S.D. Fla. Aug. 21, 2023) (same); Mafundu v. Mayorkas, No. 23-cv-60611-RAR, 2023 WL 5036142, at *4-5 (S.D. Fla. Aug. 8, 2023) (same); Mercado v. Miller, No. 2:22-cv-02182-JAD-EJY, 2023 WL 4406292, at *3 (D. Nev. July 7, 2023) (same); Lovo v. Miller, No. 5:22-cv-00067, 2023 WL 3550167, at *4 (W.D. Va. May 18, 2023) (same).

For one example, in Mafundu, the plaintiffs filed an action to compel defendants to issue a decision on a pending Waiver Application, alleging that USCIS had unreasonably delayed adjudicating the application. Mafundu, 2023 WL 5036142, at *1. The court there concluded that Section 1182(a)(9)(B)(v) prohibits judicial review of USCIS's delay. Id. at *4-5. The court reasoned that the word "action" has an expansive meaning both under the common dictionary definition, which defines action as "a thing done" and "the process of doing," and under the APA definition of "agency action," which includes "a failure to act." Id. at *4. The court further reasoned that the use of "regarding," as the Supreme Court noted in Patel v. Garland, 596 U.S. 328, 338-39 (2022), "generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject," Mafundu, 2023 WL 5036142, at *4 (quoting Patel, 596 U.S. at 338-39), and thus "USCIS's decisions about how and when to adjudicate Form I-601A applications fall within the ambit of the expansive language Congress used when stripping federal courts of jurisdiction to review 'action[s]' regarding waivers." Id.

The majority view of the cases cited above tends to follow this same reasoning. Many of these courts, for instance, have concluded that the common dictionary definitions of decision or action are expansive enough to include a delay of adjudication, especially when read alongside the word "regarding." See, e.g., Reyes Silva, 2023 WL 7042347, at *7 (applying the common dictionary definition of "action," namely "a deliberative or authorized proceeding," and concluding that when coupled with the use of "regarding," "an 'action by the [agency] regarding a waiver under this clause' . . . encompasses the proceedings concerning a waiver"); Ybarra, 2023 WL 7323365, at *7 (same); Vijay, 2023 WL 6064326, at *1-2 (applying the common dictionary definition of "decision," which refers to a "judicial or agency determination after consideration of the facts and the law," and "action," which refers to the "process of doing something," and concluding that the use of "regarding," further broadens the meaning of decision or action to include "matters relating to the decision to grant or deny a waiver"); Echeverri, 2023 WL 5350810, at *4 (applying both the common dictionary definition of decision and action and the APA definition of agency action and concluding that both of these, when coupled with the use of "regarding," cover USCIS's decisions about the pace at which it adjudicates Waiver Applications).

A minority of courts have determined that Section 1182(a)(9)(B)(v) does not strip courts of subject matter jurisdiction. See Lara-Esperanza v. Mayorkas, No. 23-cv-01415-NYW-MEH, 2023 WL 7003418, at *6 (D. Colo. Oct. 24, 2023) (concluding that Section 1182(a)(9)(B)(v) does not bar judicial review of the plaintiff's APA claim); Granados, 2023 WL 5831515, at *5 (same); Bamba v. Jaddou, No. 1:23-CV-357, 2023 WL 5839593, at *4 (E.D. Va. Aug. 18, 2023) (same). The minority view first rejects the application of the APA definition of agency action. See Granados, 2023 WL 5831515, at *4 (concluding that "failure to act" under the APA "means a government *decision* not to make a decision," and because USCIS has not decided to take no action

on the waiver application, there has been no failure to act); Bamba, 2023 WL 5839593, at *2 (concluding that the court is not required to apply the APA definition to Section 1182 of the INA because APA definitions are only mandatory in the context of the APA itself).  The minority reasoning also distinguishes Patel.  See Granados, 2023 WL 5831515, at *5 (holding that Patel does not govern the outcome of the motion because Patel "involved review of an actual decision by the Government," namely factual findings); Bamba, 2023 WL 5839593, at *3 (concluding that "this case differs fundamentally from Patel," as Patel dealt with a different statute, Section 1252, and different circumstances, namely "an agency finding of fact prior to a judgment" as opposed to "a failure to make a decision or act").  Finally, the minority reasoning relies upon the ordinary meaning of decision or action, as provided by common dictionary definitions, to conclude that decision and action "infer some affirmative action, not inaction or a failure to act."  Bamba, 2023 WL 5839593, at *2; Lara-Esperanza, 2023 WL 7003418, at *5 (refusing to "conclude that 'decision or action' naturally encompasses government inaction"); Granados, 2023 WL 5831515, at *5 (concluding that it "cannot read the statutory language as applying to the Government's delay in making a decision").

The Court finds the majority view more persuasive.  Turning to the dictionary definitions, "decision" is defined as "the act or process of deciding," "a determination arrived at after consideration" and a "report of a conclusion."  It defines "action" as "a thing done" and "the accomplishment of a thing usually over a period of time, in stages, or with the possibility of repetition."  Although Patel concerns reviewability of factual findings in an adjustment of status petition under a different jurisdiction stripping provision, the Court's consideration of the word "regarding" is not limited to the specific provision at issue in that case.  The Supreme Court suggested that its interpretation applies more broadly, noting that "the use of 'regarding' 'in a legal

context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject.'" Patel, 596 U.S. at 338-39.  As the majority of courts have concluded, a decision or action regarding a Waiver Application would comprise decisions made about the process of adjudicating a Waiver Application, including delays that may arise from USCIS's decision to prioritize other matters.

Moreover, this Court has considered, as the court in Beltran noted, that "judicial review of the complained-of delays necessarily would require meddling into the 'affirmative action[s]' . . . of the USCIS that have resulted in the delayed adjudication of [plaintiff's] waiver application." Beltran, 2023 WL 6958622, at *6 (internal citations omitted).  That is, review of the delay in adjudication would require review of the agency's affirmative decision to prioritize its consideration of other Waiver Applications, which is a decision or action regarding such waivers that "are insulated from judicial review" under Section 1182(a)(9)(B)(v).  Id.

For all of these reasons, the Court concludes that it lacks subject matter jurisdiction to review USCIS's delay in adjudication of the Waiver Applications,[1] and the Court dismisses the claims against the USCIS defendants on this basis.[2]

**VI.   Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 12, dismissing the claim against the Department of State without prejudice and dismissing the claims against USCIS with prejudice.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[1] To the extent that Plaintiffs seek mandamus, USCIS argues that Fed. R. Civ. P. 81(b) "abolished the writ of mandamus in district courts" and thus any claim for relief in the form of mandamus must be brought under the Mandamus Act.  D. 13 at 13 n.3.  Even assuming *arguendo* that the writ is available here, to prevail on a claim for mandamus against an agency, a plaintiff ordinarily must show that the agency has "acted (or failed to act) in disregard of a clear legal duty and that there be no adequate conventional means for review."  See In re City of Fall River, 470 F.3d 30, 32 (1st Cir. 2006).  USCIS argues that "the only purported duty identified here comes from the APA," so Plaintiffs' ability to state a claim under the Mandamus Act rises and falls with their ability to state a claim under the APA.  D. 13 at 13 n.3.  Accordingly, the Court allows the motion to dismiss as to the mandamus relief sought for the same reasons expressed under the APA analysis.  See King v. Off. for C.R. of the U.S. Health and Hum. Servs., 573 F. Supp. 2d 425, 429 n.2 (D. Mass. 2008) (concluding that "[b]ecause the APA provides a remedy and jurisdiction, this Court need not separately address the request for the remedy of mandamus under 28 U.S.C. § 1361").

[2] In light of this ruling, the Court does not reach the USCIS's alternative basis for dismissing under Fed. R. Civ. P. 12(b)(6).  D. 13 at 12.